**IN THE UNITED STATES BANKRUPTCY
COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 7 |
| CRAFT BUILDERS, INC., | Case No. 23-9962 |
| Debtor. | Honorable Jacqueline P. Cox |
| ALEX D. MOGLIA, not personally, but solely as the Chapter 7 Trustee of CRAFT BUILDERS, INC., | |
| Plaintiff, | |
| v. | Adv. No. |
| WERONIKA ZASADZKI | |
| Defendant. | |

**COMPLAINT TO AVOID AND RECOVER
FRAUDULENT TRANSFERS AND FOR OTHER RELIEF**

Alex D. Moglia ("Moglia" or the "Trustee"), not personally, but solely as the chapter 7 Trustee of the bankruptcy estate of Craft Builders, Inc. (the "Debtor") in the above-captioned bankruptcy case, brings this complaint (the "Complaint") against Defendant Weronika Zasadzki ("Zasadzki" or the "Defendant"), and in support thereof, respectfully states and alleges as follows:

**<u>The Parties</u>**

1.      The Plaintiff is Moglia, not individually, but solely as the Trustee of the Debtor's bankruptcy estate.

2.      Pursuant to Section 502, 544, and 550 of the Bankruptcy Code, the Trustee has

1

standing to bring this adversary proceeding.

3.      The Debtor is an Illinois business corporation formed in 2011.

4.      The Defendant Zasadzki is an individual who resides at the real property located at and commonly known as 3408 Fairlawn Dr., Glenview, Illinois 60025 (the "Glenview Property").

5.      Zasadzki is married to and the wife of Tomasz Zasadzki ("Tomasz").

6.      Tomasz, Defendant Zasadzki's husband, is the founder of the Debtor and has always been the sole officer, director and shareholder, owning 100% of the stock, of the Debtor.

7.      At all relevant times, Tomasz was employed by the Debtor.

8.      Tomasz is an "insider" of the Debtor under the Bankruptcy Code as defined in Section 101(31)(B).

9.      Defendant Zasadzki is an "insider" of the Debtor under the Bankruptcy Code as defined in Section 101(31)(B).

10.     On July 31, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the above-captioned case in this district as case No. 23–9962.

11.     Shortly thereafter, Moglia was appointed to serve as Chapter 7 Trustee for the Debtor's bankruptcy estate.

## Jurisdiction and Venue

12.     This Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2) and § 1334.

13.     This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

14.     Venue is proper in this Court under 28 U.S.C. § 1409.

15.     The statutory predicates for the relief requested in this Complaint are 11 U.S.C. §§ 101, 105, 502, 544, and 550 and the other provisions of Title 11 of the United States Code (the "Bankruptcy Code"), the Uniform Fraudulent Transfer Act as enacted in Illinois, 740 ILCS 160/1, *et seq*., and 26 U.S.C. §§ 6501 and 6502.

## Facts Relevant to All Counts

Debtor Acquires the Glenview Property

16.     On or about August 16, 2011, the Debtor was incorporated as an Illinois business corporation and operated a construction business.

17.     At all relevant times, Tomasz was the Debtor's sole officer, director, and shareholder, was employed by the Debtor.

18.     Tomasz principally made a living operating the Debtor's business and, at all relevant times, devoted at least 50% of his time working for the Debtor.

19.     During the period from approximately June 23, 2015, through November 7, 2018, the Debtor also owned the Glenview Property.

20.     The Glenview Property is located at 3408 Fairlawn Dr. in Glenview, Illinois 60025, and is more particularly described in the following legal description:

LOT 39 IN NIXON'S GREENWOOD CENTRAL DEVELOPMENT UNIT B,
A SUBDIVISION OF PART OF THE EAST ½ OF THE NORTH EAST FRACTIONAL ½ OF SECTION 10 AND PART OF THE WEST ½ OF THE WEST FRACTIONAL ½ OF SECTION 11, TOWNSHIP 41 NORTH, RANGE 12 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

21.     The Glenview Property consists of an approximately 9,247 square foot lot improved by a 3 bedroom, 1 bath single family home (the "House").  At the time the Debtor

purchased the Glenview Property, the House was approximately 1,060 square feet with an attached 1 car garage.

22.      On or about June 23, 2015, or June 24, 2015, the Debtor purchased the Glenview Property for a purchase price of $145,000.00 pursuant to a warranty deed (the "Deed") under which the Debtor was the grantee.  A true and correct copy of the Deed is attached hereto as Exhibit 1.

23.      Including both the purchase price for the Glenview Property and all related closing costs, the Debtor spent a total of $147,916.02 on the Glenview Property.  A copy of the closing statement reflecting all amounts paid and credited to the Debtor in connection with the purchase of the Glenview Property is attached hereto as Exhibit 2.

24.      The Debtor paid cash for the Glenview Property, which remains free of mortgages, liens or other encumbrances.

25.      On or about July 14, 2015, the Deed was recorded with the Cook County Recorder of Deeds.

26.      At the time the Debtor acquired the Glenview Property, on information and belief, the interior of House had already been at least partially demolished and the House was in need of substantial renovation.  Among other things, on information and belief, several interior rooms had incomplete walls with fully exposed wooden studs and lacked flooring, other interior walls were deteriorating or damaged, several interior doors were missing, and other portions of the House were damaged, dilapidated and/or deteriorating.  Several appliances and other fixtures, such as, without limitation, a washer, a dryer, sinks, and/or a refrigerator were not present in the House or included in the sale to the Debtor.

27.      After purchasing the Glenview Property, the Debtor performed significant

4

work on the Glenview Property and refurbished and expanded the House.

28.     The Debtor substantially renovated, upgraded and modernized the entire House.  On information and belief, among other things, the Debtor installed new wood flooring throughout the House, installed new windows, built new and/or completed and painted interior walls, installed new doors, installed a contemporary kitchen with granite, stone or marble countertops, a contemporary bathroom, and installed new, contemporary light fixtures, sinks and appliances.  Additionally, the Debtor, on information and belief, either repainted the exterior or installed new siding and built a new and/or fully renovated deck.

29.     In addition to modernizing and upgrading the House, the Debtor, on information and belief, increased the size of the House to approximately 1,330 square feet.

30.     Within a month or two after acquiring the Glenview Property, the Defendant and Tomasz moved into the House.

31.     Since moving in, the Defendant and Tomasz have resided and continued to reside in the House and have had the use, occupancy, possession and control of and over the Glenview Property, including the House.

32.     Neither Tomasz nor the Defendant have ever paid rent or any other compensation to the Debtor for the use and occupancy of the Glenview Property, including the House, nor did the Debtor ever charge rent or demand that Tomasz and the Defendant pay any compensation for the use and occupancy of the Glenview Property, including the House.

33.     Under oath at the meeting of creditors in this bankruptcy case, Tomasz stated that the Debtor purchased the Glenview Property so that Tomasz and the Defendant Wasadzki could live there.

34.     The Debtor provided the free use and occupancy of the Glenview Property, including the House, to Tomasz as a fringe benefit as part of the conditions of his employment.

Debtor Systematically Failed to Meet Its Tax Obligations

35.     In 2011, the Debtor elected to be taxed as a subchapter S corporation.

36.     Although the Debtor elected to be taxed as a subchapter S corporation, the Debtor is and was required, among other things, to: (i) file tax returns on an annual basis ("Annual Tax Returns"); (ii) file quarterly and annual employment tax returns and/or reports with the federal government (collectively, "Employment Tax Returns"); and (iii) pay employment taxes, including, without limitations, taxes under the Federal Insurance Contributions Act ("FICA") and the Federal Unemployment Tax Act ("FUTA"), related to any compensation paid to any employee, including Tomasz, and to withhold income taxes from such compensation.

37.     The Debtor was also obligated to include the value of any fringe benefits provided to Tomasz, including the free use and occupancy of the Glenview Property, in calculating withholdings and employment taxes.

38.     On information and belief, the Debtor filed Annual Tax Returns and/or at least some Employment Tax Returns for 2015 and 2016.  However, the Debtor filed at least some of those returns late and has never paid the related tax obligations in full.  On information and belief, the Debtor still owes at least interest and/or penalties for these years.

39.     During the period from 2017 through the Petition Date, the Debtor failed to file any Annual Tax Returns and failed to file Employment Tax Returns for at least part of 2017 or period thereafter.

40.     Attached hereto as Exhibit 3 is a copy of a letter dated November 21, 2023,

that the Internal Revenue Service (the "IRS") sent to the Trustee along with a Form 13736 identifying several Annual Tax Returns and Employment Tax Returns for the Debtor that the IRS does not have.

41.     On information and belief, by at least the summer or fall of 2018, the Debtor was indebted to the IRS, owing unpaid interest on tax obligations from 2015 and 2016 and employment taxes for 2017 (the "Known Unpaid 2015 to 2017 Tax Obligations").  Due, among other things, to the Debtor's failure to file numerous Annual Tax Returns and Employment Tax Returns additional tax obligations to the IRS have yet to be calculated and remain unpaid (the "Additional Tax Obligations").

42.     On information and belief, the Debtor never reported, paid or withheld any income or employment taxes related to the fringe benefit provided to Tomasz of the free use and occupancy of the Glenview Property.   Any employment taxes or income tax withholding obligations related to this fringe benefit are also among the Debtor's Additional Tax Obligations.

43.     After the Petition Date, the Debtor informed the Trustee that it filed Annual Returns for the years 2020, 2021 and 2022.

44.     Annual Tax Returns for 2017 through 2019 and Employment Tax Returns for 2017 through 2023 remain unfiled.

45.     On information and belief, the Debtor owes Additional Tax Obligations comprised of unpaid employment taxes, unpaid income taxes, interest and penalties for at least the years 2017, 2018, 2019, 2020, 2021, 2022, and 2023 in addition to the Known Unpaid 2015 to 2017 Tax Obligations.

<u>Debtor's Business Declines Dramatically After 2015</u>

46.    During 2015, the Debtor generated gross revenues of approximately $1,570,060 million with net income, after reduction for all costs and expenses, of approximately $371,287.

47.    Over the next few years, however, the Debtor's business declined significantly and only generated the approximate gross revenues and net income, after reduction for all costs and expenses, for the calendar years 2016, 2017, and 2018 as listed in the following table:

| Year | Gross Revenue | Net Income |
|------|---------------|------------|
| 2016 | Approximately $914,308 | Approximately $29,674 |
| 2017 | Approximately $794,245 | Approximately $123,035 |
| 2018 | Approximately $254,432 | Approximately $22,255 |

48.    The Debtor's business never materially improved.

49.    As listed in the Annual Tax Returns for the years 2020, 2021 and 2022, filed by the Debtor after the Petition Date, the Debtor generated gross revenue and, after reduction for costs and expenses, net income as listed in the following table:

| Year | Gross Revenue | Net Income |
|------|---------------|------------|
| 2020 | $292,134 | $0 |
| 2021 | $262,608 | $124 |
| 2022 | $356,465 | $68 |

50.    On July 27, 2023, Tomasz, the Debtor's sole officer, director and shareholder filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code with the Court and initiated the bankruptcy case captioned *In re Tomasz Zasadzki* (Case No. 23-9781) (the "Tomasz Bankruptcy Case").

51.    On the Petition Date, July 31, 2023, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code and commenced this bankruptcy case.

52.    On or about October 31, 2023, Tomasz received a discharge in the Tomasz Bankruptcy Case.

53.    On or about November 5, 2023, the chapter 7 trustee of the Tomasz' bankruptcy estate filed a no asset report, and the Tomasz Bankruptcy Case was closed shortly thereafter without any distribution to Tomasz's creditors.

Debtor's Insolvency and Transfer of the Glenview Property to Defendant

54.    In 2017, while the Debtor's business was declining, the Debtor developed a business relationship with Sekpol, a Polish company that manufactures and distributes doors, related hardware, and other goods (the "Sekpol Goods").

55.    During 2017 and 2018, the Debtor made several orders (collectively, the "Sekpol Orders" and each a "Sekpol Order") for a substantial amount of Sekpol Goods but was unable to pay the invoices for the purchase price of all of the Sekpol Orders.

56.    By the spring of 2018, the Debtor and Sekpol began settlement discussions to resolve disputes related to the Debtor's failure to pay Sekpol's invoices for the Sekpol Orders.

57.    On or about March 18, 2018, Sekpol, on one hand, and the Debtor and Tomasz,

on the other hand, entered into a settlement agreement dated March 17, 2018 (the "Settlement Agreement"), under which the Debtor agreed to pay the then unpaid invoices to Sekpol in partial payments within a 90-day period pursuant to a payment schedule in the Settlement Agreement.  Additionally, Tomasz personally guaranteed the Debtor's payment obligations therein.  A copy of the Settlement Agreement is attached hereto as Exhibit 4.

58.    Pursuant to the Settlement Agreement, the Debtor was obligated to pay Sekpol a total of $171,330.70 (the "Settlement Amount") within 90 days of the execution of the Settlement Agreement on March 18, 2018, in the following manner:

(a)    $60,000 on or before April 17, 2018 (i.e. within 30 days of the execution of the Settlement Agreement);

(b)    $60,000 on or before May 17, 2018 (i.e. within 60 days of the execution of the Settlement Agreement); and

(c)    $51,330.79 on or before June 16, 2018 (the "Final Payment Deadline") (i.e. within 90 days of the execution of the Settlement Agreement).

59.    Although the Debtor made partial payments under the Settlement Agreement, it failed to pay the remaining $43,071.27 (the "Unpaid Settlement Balance") of the Settlement Amount to Sekpol on or before the Final Settlement Deadline of June 16, 2018.

60.    After the execution of the Settlement Agreement through at least the summer of 2018, the Debtor continued to make additional Sekpol Orders for which Sekpol issued at least the following invoices to the Debtor (collectively, the "Post-Settlement Invoices" and each a "Post-Settlement Invoice"):

(a)    Post-Settlement Invoice dated March 19, 2018, in the amount of approximately

$65,191.42;

(b)     a Post-Settlement Invoice dated July 11, 2018, in the amount of approximately $51,993.40; and

(c)     a Post-Settlement Invoice dated July 17, 2018, in the amount of approximately $3,136.27.

61.     Copies of the Post-Settlement Invoices are attached hereto as a group Exhibit 5.

62.     Mirroring its performance under the Settlement Agreement, the Debtor failed to pay all of the Post-Settlement Invoices, leaving an unpaid balance owing to Sekpol of approximately $92,795.78 (the "Post-Settlement Invoice Balance").

63.     On or about November 5, 2018, while the Debtor's debts to Sekpol and tax obligations were mounting, the Debtor convened special meetings of both the Debtor's shareholders and the Debtor's board of directors, at which Tomasz, the sole officer, director and shareholder, approved and authorized the transfer of the Glenview Property to the Defendant Zasadzki, Tomasz's wife, by quit claim deed for no consideration.  Copies of the Minutes of a Special Meeting of the Shareholders of Craft Builders, Inc., dated November 5, 2018, and the Minutes of a Special Meeting of the Board of Directors of Craft Builders, Inc., dated November 5, 2018, are attached hereto as Exhibit 6.

64.     On or about November 7, 2018, the Debtor transferred the Glenview Property to Defendant Zasadzki for no consideration by executing a quit claim deed (the "Quit Claim Deed").  A copy of the Quit Claim Deed is attached hereto as Exhibit 7.

65.     At all relevant times before and since the transfer of the Glenview Property,

Defendant Zasadzki and Tomasz have lived and resided in and have had use and possession of the Glenview Property, including the House.

66.     On or about November 19, 2018, Sekpol sent a notice of default (the "Default Notice") to the Debtor demanding that the Debtor pay both the Unpaid Settlement Balance and the Post-Settlement Invoice Balance.  A copy of the Default Notice is attached hereto as Exhibit 8.

67.     On or about January 25, 2021, Sekpol commenced a lawsuit against the Debtor and Tomasz captioned *Sekpol v. Craft Builders, Inc. and Tomasz Zasadzki*, Case Number 2021 L 000856 (the "Sekpol Action"), in the Circuit Court of Cook County, Illinois (the "Circuit Court"), in which Sekpol asserted claims against the Debtor for both the Unpaid Settlement Balance and the Post-Settlement Invoice Balance.

68.     On or about July 31, 2023, the Petition Date, the Debtor commenced this bankruptcy case.

69.     On or about January 5, 2024, Sekpol timely filed a proof of claim for the Unpaid Settlement Balance and the Post-Settlement Invoice Balance totaling $135,867.05 for which Sekpol asserts a non-priority, unsecured claim.  Sekpol's proof of claim appears as Claim Number 3-1 on the claims register maintained by the Clerk of the Court in the Debtor's bankruptcy case.

Debtor Was Insolvent at Time of or as a Result of the Transfer of the Glenview Property

70.     The Debtor transferred the Glenview Property to the Defendant for no consideration in November 2018, a year during which both the Debtor's gross revenue and net income continued to plummet.

71.     At the time of the transfer of the Glenview Property to the Defendant for no consideration:

    (a)   the Debtor had already incurred substantial debts to Sekpol;

    (b)   the Debtor had failed to makes required payments under the Settlement Agreement with Sekpol;

    (c)   Sekpol had already begun demanding payment;

    (d)   the Debtor was already indebted to the IRS for some or all of the Known Unpaid 2015 to 2017 Tax Obligations;

    (e)   the Debtor had already failed to file both an Annual Tax Return for 2017 and Employment Tax Returns for portions of 2017 and any of 2018; and

    (f)   the Debtor was already in debt to the IRS for a yet to be determined amount of the Debtor's Additional Tax Obligations.

72.     At the time of the transfer of the Glenview Property to Defendant Zasadzki for no consideration, the Debtor and Tomasz knew or reasonably should have known that:

    (a)   the Debtor owed substantial debts to Sekpol consisting of the Unpaid Settlement Balance and the Post-Settlement Invoice Balance, owed unpaid tax obligations to the IRS and was behind on its tax reporting obligations.

    (b)   the transfer of the Glenview Property would render the Debtor insolvent;

    (c)   the transfer of the Glenview Property would leave the Debtor insufficient assets to pay all of its debts;

    (d)   the Debtor was engaged in a business that required it to incur additional debts for which the Debtor's remaining assets were unreasonably small in relation to

13

the capital requirements of its business;

(e)   the Debtor intended to purchase, believed it would purchase, expected to purchase, or reasonably should have believed it would purchase supplies and resources on credit from its suppliers or through the use of its credit cards and otherwise incur debts beyond the Debtor's ability to pay as they became due; and

(f)   the Debtor's business was not generating sufficient income from ongoing operations to pay its debts over time.

73.   After transferring the Glenview Property to Zasadzki, the Debtor's business never generated sufficient income to pay its debts.

74.   The transfer of the Glenview Property to Defendant Zasadzki for no consideration either rendered the Debtor insolvent and without sufficient capital to operate its business and pay its debts   or was made while the Debtor was already insolvent.

75.   A copy of the Debtor's Interim Balance Sheet as of November 30, 2018 (the "November 2018 Balance Sheet"), prepared by the Debtor and its accountants and maintained in its books and records, is attached hereto and made a part hereof as Exhibit 9.

76.   Although the Glenview Property is improperly listed as one of the Debtor's assets with a value of $147,916.02 in the November 2018 Balance Sheet, the Glenview Property had already been transferred to Defendant Zasadzki for no consideration earlier in the month on November 7, 2018.

77.   After subtracting the listed value of Glenview Property from the total value of the Debtor's assets on the November 2018 Balance Sheet, the total value of the Debtor's assets

after the transfer to the Defendant was no more than $57,262.36, while its total listed liabilities were at least $111,101.95.

78.     A copy of the Debtor's balance sheet as of December 31, 2018 (the "2018 Balance Sheet"), prepared by the Debtor and its accountants and maintained in its books and records, is attached hereto and made a part hereof as Exhibit 10.

79.     Although the Glenview Property is improperly listed as one of the Debtor's assets with a value of $147,916.02 in the 2018 Balance Sheet, the Glenview Property had already been transferred to Defendant Zasadzki for no consideration on November 7, 2018. After subtracting the listed value of Glenview Property from the total value of the Debtor's assets, the 2018 Balance Sheet shows that the Debtor ended 2018 with assets with a total value of only $38,649.19, and with total liabilities of at least $114,087.33.

80.     Both the 2018 Balance Sheet and the November 2018 Balance Sheet under-report the Debtor's liabilities as they do not reflect or fully reflect the Debtor's debts owed to Sekpol, the Known Unpaid 2015 to 2017 Tax Obligations or the Debtor's Additional Tax Obligations, among others.

81.     The transfer of the Glenview Property to Defendant Zasadzki for no consideration caused the Debtor to become insolvent or occurred at a time when the Debtor was insolvent and left the Debtor without sufficient capital to meet its obligations as they came due.

The IRS has an Allowable Claim

82.     On or about November 22, 2023, the IRS timely filed a proof of claim (the "IRS Proof of Claim") for an unsecured claim in the amount of $22,600.80, of which the IRS asserts $7,780.75 is entitled to a priority distribution under Section 507(a)(8) of the

Bankruptcy Code.  The IRS Proof of Claim is Claim Number 2-1 on the claims register maintained by the Clerk of the Court in the Debtor's bankruptcy case.  A copy of the IRS Proof of Claim is attached hereto as Exhibit 11.

83.    Among the unpaid taxes included in the IRS Proof of Claim are the Known Unpaid 2015 to 2017 Tax Obligations, including, employment taxes owed by the Debtor from the fourth quarter of 2017 and interest on taxes from 2015 and 2016.  Additionally, the IRS Proof of Claim includes estimated amounts of taxes for all or parts of 2017 through 2023 comprising at least a portion of the Debtor's Additional Tax Obligations.

84.    The IRS Proof of Claim is an allowable claim under Section 502 of the Bankruptcy Code.

## COUNT I
## (Constructively Fraudulent Transfers: Sections 544 and 550, and UFTA)

85.   The Trustee incorporates by reference the allegations set forth in Paragraphs 1 through 84 above as if fully restated and realleged in this paragraph.

86.   Pursuant to Section 544(b) of the Bankruptcy Code, the Trustee may avoid any transfer that is avoidable under applicable law by an unsecured creditor that has an allowable claim under Section 502 of the Bankruptcy Code, including the rights provided under the Uniform Fraudulent Transfer Act (the "UFTA").

87.   The IRS is an unsecured creditor of the Debtor and the IRS Proof of Claim is an allowable claim under Section 502 of the Bankruptcy Code.

88.   Since at least March 2018 and at all times thereafter, there have been several unsecured creditors who remained unpaid as of the Petition Date, including, the IRS and Sekpol, among others.

89.   Defendant Zasadzki is an "insider" of the Debtor under the UFTA as enacted in Illinois, 740 ILCS 160/2(g)(2) and (4).

90.   The Debtor's November 7, 2018, transfer of Glenview Property to Defendant Zasadzki occurred approximately four years and eight and half months prior to the Petition Date.

91.   The IRS is not subject to the statute of limitations provided in 740 ILCS 160/10 but can bring an action under the UFTA to avoid transfers within ten years of the transfer under 26 U.S.C. §§ 6501 and 6502 (the "IRS Reach Back Period").

92.   Under Section 544(b)(1), the Trustee may avoid any transfer that the IRS could have avoided within the IRS Reach Back Period.

93.   The Debtor received less than reasonably equivalent value in exchange for the transfer of the Glenview Property to Defendant Zasadski.

94.   At the time of the transfer of the Glenview Property to Defendant Zasadzki, the Debtor:

(a)   was insolvent on November 7, 2018, or became insolvent as a result of such transfer of the Glenview Property;

(b)   was engaged or was about to engage in business or transactions for which the Debtor's remaining assets were or would be following the transfer of the Glenview Property unreasonably small in relation to those required for the Debtor's business or transactions; or

(c)   intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts became due.

95.     Therefore, the transfer of the Glenview Property is avoidable as constructively fraudulent transfer under the UFTA as enacted in Illinois, 740 ILCS 160/5(a)(2).

96.     Defendant Zasadzki has and continues to benefit from the transfer by the Debtor of the Glenview Property to her.

97.     Defendant Zasadzki was the initial transferee of the transfer of the Glenview Property and the person for whose benefit the transfer of the Glenview Property was made.

98.     The Trustee is entitled to avoid the transfer of the Glenview Property to Defendant Zasadzki.

99.     The Trustee is entitled to recover the Glenview Property from Defendant Zasadzki.

WHEREFORE, the Trustee respectfully requests that the Court enter a judgment in favor of the Trustee and against Defendant Zasadzki on Count I:

A.  Avoiding all of the transfer of the Glenview Property to the Defendant;

B.  Transferring and awarding the Glenview Property to the Trustee on behalf of the Trustee on behalf of the Debtor's bankruptcy estate;

C.  Making an interim award to the Trustee of an attachment on the assets of the Defendant under Illinois, 740 ILCS 160/8(a)(2);

D.  Entering an injunction against the Defendant prohibiting the Defendant from transferring any interest in, mortgaging, or otherwise encumbering the Glenview Property under Illinois, 740 ILCS 160/8(a)(3)(A);

E.  Appointing a receiver to take possession and charge of the Glenview Property and/or other assets from the Defendant with a value of at least as

much as the Glenview Property or such other relief as may be appropriate under the circumstances under Illinois, 740 ILCS 160/8(a)(3)(B) and (C); and

F. Granting such other and further relief as the Court deems just or appropriate.

## <u>COUNT II</u>
### <u>(Transfers With Intent to Hinder Delay or Defraud: Sections 544 and 550 and UFTA)</u>

100.     The Trustee incorporates by reference the allegations set forth in Paragraphs 1 through 99 above as if fully restated and realleged in this paragraph.

101.     The Debtor transferred the Glenview Property to and for the benefit of Defendant Zasadzki, an insider of the Debtor, for no consideration.

102.     The Debtor transferred the Glenview Property for the benefit of Tomasz, an insider of the Debtor, for no consideration.

103.     Immediately prior to the transfer of the Glenview Property to Defendant Zasadzki, the Glenview Property was the Debtor's single most valuable asset.

104.     At the time of the transfer of the Glenview Property, the Debtor owed money to various suppliers and vendors, including, among others, Sekpol, and the IRS and was behind on its state and federal tax reporting obligations.

105.     The transfer of the Glenview Property was made after the Debtor had defaulted on the Sekpol Settlement Agreement and Sekpol had threatened the Debtor with litigation.

106.     The Debtor was insolvent at the time it transferred the Glenview Property to Defendant Zasadzki or was rendered insolvent as a direct result of or shortly after the transfer of the Glenview Property to Defendant Zasadzki.

19

107.    The Debtor transferred the Glenview Property to Defendant Zasadzki with actual intent to hinder, delay or defraud the Debtor's then existing and subsequently arising creditors.

108.    The transfer of the Glenview Property is avoidable as a transfer made with the actual intent to hinder, delay or defraud creditors under the UFTA as enacted in Illinois, 740 ILCS 160/5(a)(1) and (b).

109.    Defendant Zasadzki benefited from the transfer of the Glenview Property.

110.    Defendant Zasadzki was the initial transferee of the Glenview Property and the person for whose benefit such transfer was made.

111.    The Trustee is entitled to recover the Glenview Property from Defendant Zasadzki.

WHEREFORE, the Trustee respectfully requests that the Court enter a judgment in favor of the Trustee and against the Defendant on Count II:

A.  Avoiding the transfer of the Glenview Property;

B.  Entering judgment in favor of the Trustee and against the Defendant;

C.  Transferring and awarding the Glenview Property to the Trustee on behalf of the Debtor's bankruptcy estate;

D.  Making an interim award to the Trustee of an attachment on the Glenview Property and/or other assets of the Defendant under Illinois, 740 ILCS 160/8(a)(2);

E.  Entering an injunction against the Defendant prohibiting her from transferring any interest in, mortgaging or otherwise encumbering the

Glenview Property under Illinois, 740 ILCS 160/8(a)(3)(A);

F.  Appointing a receiver to take charge of the Glenview Property and/or other assets from the Defendant with a value of at least as much as the Glenview Property or such other relief as may be appropriate under the circumstances under Illinois, 740 ILCS 160/8(a)(3)(B) and (C); and

G.  Granting such other and further relief as the Court deems just or appropriate.

## <u>COUNT III</u>
### <u>(For Disallowance of Claims Under Sections 502(d) and 550 of the Bankruptcy Code)</u>

112.   The Trustee incorporates by reference the allegations set forth in Paragraphs 1 through 111 above as if fully restated and realleged in this paragraph.

113.   Section 502(d) of the Bankruptcy Code provides that the Court shall disallow the claims of any entity from which property is recoverable under Section 550 of the Bankruptcy Code or that is a transferee of a transfer that is avoidable under Section 544 thereof unless such entity has turned over the property for which it is liable under Section 550 of the Bankruptcy Code.

114.   The Defendant has not surrendered the Glenview Property to the Trustee, and, therefore, any claims the Defendant may assert must be disallowed.

WHEREFORE, the Trustee respectfully requests that the Court enter a judgment in favor of the Trustee and against the Defendant on Count III:

A.  Disallowing any and all claims that may be asserted by the Defendant; and

B.  Granting such other and further relief as the Court deems just or appropriate.

Dated: January 31, 2024

**Alex D. Moglia, not personally, but solely as the Chapter 7 Trustee of the Bankruptcy Estate of Craft Builders, Inc.**

By: /s/Michael M. Schmahl
Michael M. Schmahl
Mason Pollick & Schmahl LLC
70 W. Hubbard
Suite 304
Chicago, IL 60654-4603
(312) 312-5531
mschmahl@mps-law.com
*Counsel to the Trustee*